UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GUSTAVO ADOLFO A.J.,[1]

Petitioner,

v.

WARDEN, et al.,

Respondents.

No. 1:26-cv-05570-TLN-AC

A# 216-437-506

**RELEASE ORDER**

This matter is before the Court on Petitioner Gustavo Adolfo A.J.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 11.) The matter is fully briefed. (ECF No. 16.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is an asylum seeker who entered the United States with his then three-year-old son on November 25, 2017. (ECF No. 7-2 at 2.) They were initially processed for expedited removal and then, per the government's records, "THE CASES WERE CHANGED FROM EXPEDITED REMOVALS TO NOTICES TO APPEAR." (*Id.*) They were then released into the country on humanitarian parole the following day. (ECF No. 1 at 12–13.) It is unclear from the record whether Petitioner was at some point re-detained, however, on June 20, 2019, the U.S. Department of Homeland Security ("DHS") issued Petitioner an order of release on recognizance pursuant to section 236 of the Immigration and Nationality Act ("INA"). (ECF No. 16-4 at 1–3.)

For the past eight years, Petitioner has lived in Florida and supported his family through his janitorial business. (ECF No. 11 at 4–5.) He and his wife now have a daughter who is a United States citizen. (ECF No. 1 at 25.) Petitioner applied for asylum, obtained employment authorization and a driver's license, paid taxes, appeared for immigration court proceedings, and completed annual reporting to U.S. Immigration and Customs Enforcement ("ICE"). (*Id.* at 9, 22–24, 26, 64; ECF No. 11 at 6; ECF No. 7-1 at 5.) Petitioner was issued a second Notice to Appear in August of 2024, which an immigration judge ("IJ") closed the case for failure to prosecute later that year. (ECF No. 7-1 at 5.) Petitioner has no criminal history. (*Id.*) Petitioner submits letters from his landlord of eight years, his pastor, church community member, and his two children attesting to his good character. (ECF No. 1 at 14–16, 31–41.)

On May 28, 2026, Petitioner was stopped by the Florida Highway Patrol while driving to work. (ECF No. 11 at 6.) The officers arrested him "for immigration violations without incident." (ECF No. 7-1 at 4.) He was thereafter taken into ICE custody and issued a Notice to Appear with a box checked stating, "You are an arriving alien." (*Id.* at 5; ECF No. 7-2 at 1.) Petitioner requested a custody redetermination, and the request was denied upon the IJ finding the immigration court "is precluded by regulation from redetermining [Petitioner's] custody status because DHS has designated the [Petitioner] as an arriving alien in the notice to appear." (ECF No. 7-3 at 1.) Respondents then transferred Petitioner to the California City Immigration Processing Center in this district. (ECF No. 11 at 8.)

Petitioner filed a pro se Petition for Writ of Habeas Corpus, followed by the instant First Amended Petition filed with the assistance of counsel. (ECF Nos. 1, 11.) Petitioner challenges the lawfulness of his civil immigration detention and seeks immediate release. (ECF No. 1 at 6–7; ECF No. 11 at 9–14.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention without a hearing violates the INA and the Fifth Amendment Due Process Clause. (ECF No. 11 at 9–13.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B) ("§ 1225(b)(1)") because he was released on parole.[2] (ECF No. 16 at 2–3.) The Court considers each claim in turn.

---

[2] Respondents also argue the Petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 16 at 3–4.) After considering the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), the Court finds prudential exhaustion is not required here. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's statutory or constitutional claims. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege "colorable" legal challenges. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, the Court finds it unlikely that the agency will correct its own mistake upon further review. Denying habeas relief while Petitioner appeals to the BIA would be futile and delay vindication of Petitioner's statutory and constitutional rights.

A. Immigration and Nationality Act

The INA generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings. For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226(a) and (c).[3] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the government has broad discretion whether to release or detain the individual. *Id.* However, section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Though not relevant here, § 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)" based on criminal history and related considerations. *Jennings*, 583 U.S. at 289 (emphasis in original).

The expedited removal process is governed by § 1225. As relevant here, § 1225(b)(1) establishes the process for the detention and expedited removal of certain "aliens arriving in the United States and certain other aliens who have not been admitted or *paroled*." 8 U.S.C. § 1225(b)(1) (emphasis added). The statute's scope is defined as follows:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or *paroled* into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphasis added).

Here, Petitioner was paroled into the United States on November 26, 2017. (ECF No. 1 at 12–13.) He is therefore outside the scope of the express terms of the statute. To the extent Petitioner is detained under § 1225(b)(1), that detention is in violation of the INA.

The record is clear that Petitioner is in standard removal proceedings and his arrest and

---

[3] Unless otherwise noted, citations to statute refer to Title 8 of the United States Code.

detention are subject to § 1226(a). Petitioner's I-213 from 2017 states, "[ICE] DECLINED TO DETAIN [Petitioner and his son]. CONSEQUENTLY, THE CASES WERE CHANGED FROM EXPEDITED REMOVALS TO NOTICES TO APPEAR." (ECF No. 7-1 at 2.) Petitioner's order of release on recognizance in 2019 was made pursuant to § 236 of the INA, which is codified at § 1226. (ECF No. 16-4 at 1.) Respondents' statement in their opposition brief that "Petitioner's release on [an order of release on recognizance] was an error," appears to be completely made-up. (ECF No. 16 at 2.) Respondents provide no evidence to support this obvious post hoc rationalization. Additionally, Petitioner's challenged detention commenced on an I-200 warrant, which is the instrument authorized by § 1226(a) and 8 C.F.R. § 236.1(b).[4] (ECF No. 11 at 6–7; ECF No. 16 at 1.)

The record thus shows that since his release on parole in 2017, Petitioner has been in standard removal proceedings and entitled to the procedural protections provided under § 1226(a). Having now been detained for approximately five months without a bond hearing, Petitioner's detention violates the INA.

B. Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

---

[4] Though Respondents have not produced a copy of the warrant, the parties agree Petitioner was arrested on an I-200 warrant. (ECF No. 11 at 6–7; ECF No. 16 at 1.)

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole and later on an order of recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner maintains that he complied with all ICE requirements and Respondents does not claim otherwise. Petitioner has lived in the United States for over eight years and in that time, he obtained lawful employment, pursued his asylum case, and welcomed a United States citizen child. The amount of time Petitioner spent living freely in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly). Accordingly, the Court finds Petitioner maintains a clear liberty interest protected by the Due Process Clause.

*ii. Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors

support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. As Petitioner has no criminal history and has demonstrated ties to the United States and an interest in appearing at future immigration proceedings to obtain relief, the risk that he is being detained without proper justification is exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest in detaining Petitioner without notice or a hearing is low, and the effort and cost required to provide him with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents. Indeed, they are the very processes required under § 1226(a) and its implementing regulations. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

///

## IV. CONCLUSION

For the foregoing reasons, the First Amended Petition for Writ of Habeas Corpus (ECF No. 11) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Gustavo Adolfo A.J. (A# 216-437-506) from custody on the same conditions in place prior to his May 28, 2026 arrest. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's motion for temporary restraining order (ECF No. 2), motion for expedited rulings (ECF No. 17), and motion for expedited review (ECF No. 18) are DENIED as moot.

4. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: October 26, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE